### LAINHART v. WEST PALM BEACH ZONING BOARD OF APPEALS.

Circuit Court, Palm Beach County.

January 7, 1955.

Burns, Middleton, Rogers & Farrell, West Palm Beach, for petitioner.

Egbert Beall and Thomas L. Bailey, both of West Palm Beach, for respondent.

M. L. Esarey, West Palm Beach, amicus curiae, as attorney for Antonio and Sophia Tito, and as associate counsel for respondent.

OTIS FARRINGTON, Circuit Judge.

Petitioner applied to this court for certiorari under section 176.17 F.S. to review a decision of the zoning board of appeals of the city of West Palm Beach made July 8, 1954 granting the application of Antonio and Sophia Tito for a special exception to permit construction of a four-unit apartment rental building on the lake front portion of the south half of lot 20 and all of lots 21, 22 and 23, block 2, North Palm Beach, a subdivision in the city of West Palm Beach, which construction would not be otherwise permitted under the R-2 (single family district) zoning thereof under the West Palm Beach Zoning Ordinance of 1954.

Writ of certiorari was issued on July 12, 1954, and in response thereto the respondent has filed its sworn return and transcript of proceedings before it incident to the application.

Pursuant to motion by respondent this cause was set for trial before the court on August 20, 1954. The order setting the case

for trial provided for a trial de novo—"as provided by the charter of the city of West Palm Beach." The applicable portion of the said charter, section 4 (27) (d), provides as follows:—"Any person or persons jointly or severally aggrieved by any decision of the board of appeals or any officer, department, board or bureau of the city, may present to any court having chancery jurisdiction, a petition duly verified setting forth that such decision is illegal in whole or in part, specifying the grounds of the illegality. If, upon hearing, it shall appear that testimony is necessary for the proper disposition of the matter, the court may take evidence . . . which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or in part, or may modify the decision brought up for review."

Antonio and Sophia Tito filed a motion for leave to intervene, which was denied. However, they were present at the trial where they were permitted to testify. Their attorney was permitted to offer testimony and question witnesses at the trial and has filed briefs herein which have been considered by the court.

The court has considered the transcript of the proceedings before the zoning board of appeals and the findings of that board as well as the evidence presented at the trial before this court on August 20, 1954. The findings of the board are summarized in the following quotations from its sworn return and certified transcript of prceedings—". . . and it was their considered opinion that the property involved, being a large lot lying west of Poinsettia Avenue in the city of West Palm Beach; that because of the depth of the lot and size thereof that it was not suitable for any purpose other than that applied for in the request for special exception, and that the applicants were suffering from a grave hardship, it being the opinion of the board that the property could not be used for any other purpose and because of the character of the neighborhood, there being numerous rental units adjacent thereto . . . The board also considered the fact that the applicants purchased the property at a time when it was zoned so that they could build thereon the type of an improvement that they were requesting a special exception for, and that the same was rezoned at a time when they were absent from the city of West Palm Beach, and also the board, from an inspection of the adjacent properties, found that it was surrounded by other properties being used for two-family or more residences and rental units, and that the application as presented and inspection of the property made by the zoning board of appeals convinced the board that a sufficient hard-

ship existed to justify the relief which was granted in giving the exception."

It appears, therefore, that the board granted the exception for three reasons—(1) That because of its size, shape and location applicants' lot is suitable only for multiple unit housing. (2) That applicants' lot is surrounded by multiple unit and rental property and is not suitable for any purpose other than multiple unit construction, and that adherence to the R-2 zoning classification would result in grave hardship to applicants. (3) That at the time applicants purchased the lot, the zoning regulations thereon permitted multiple unit construction and that they purchased the lot with the intention of proceeding with such construction.

The applicants' lot has 87½ feet frontage on Poinsettia Ave. and extends in depth approximately 400 feet to the shore of Lake Worth. It was established by the evidence presented at the trial that the lot in question would command a higher price in the market and would produce more income for the applicants if multiple unit construction were permitted thereon than under its present R-2 classification.

The evidence does not support the board's finding that the Tito property is suitable only for multiple unit construction. The Titos have used it for single family residence purposes since acquisition. The fact that attractive rental units have been constructed on the adjacent lot to the south lessens its desirability as a residence lot, but does not render it valueless for such purpose. The court is of the opinion that the value of their lot is depressed not more than 25% because of the R-2 zoning restrictions. The fact that the proposed non-conforming use would be financially advantageous or more profitable to the applicant is not, of itself, a basis for a claim of unnecessary hardship. See annotation in 168 A.L.R., pages 30, 31.

An examination of the plat of the area clearly indicates that applicants' situation, i.e., the ownership of a deep lot with comparatively narrow street frontage, is in no way unique and distinct from that of adjoining owners. In fact, all the lots in the R-2 area in which the lot is located have exactly the same characteristics as to shape. The general rule in zoning cases is that if the alleged hardship is common to the whole area the case is not one for the board of appeals but one for the legislative body—rezoning is the proper relief, not the granting of the special privilege of a variation to a single owner. This rule is stated in A.L.R. as follows— "It is generally held that, to warrant the granting of a variance

on the ground of unnecessary hardship, the hardship relied upon must be special and peculiar to the applicant, and must not arise from a condition which affects other property in the same zone or district generally." (Citing many cases as authority.) Annotation, 168 A.L.R. 28.

The evidence does not sustain the finding of the board that the Tito property is "surrounded" by multiple-unit and rental property. It is true that the Fields property, which is adjacent to the Tito property on the south, is used for multiple rental units. Adjacent to the Fields property on the south there are multiple rental units on the Beymer property, south of which is a non-conforming boat yard. Thus it appears that commencing with the Fields property and continuing south the use is generally not in conformity with R-2 zoning classification. However, the court finds from the evidence presented that there is no serious deviation from the letter, purpose or intent of the existing R-2 classification in the area commencing with the Tito property and extending for a considerable distance to the north.

The Tito property is in the unfortunate position of being the border lot. There is no doubt that the value of their property for residential purposes is lessened by the existence of multiple rental units on the Fields property to the south. As was stated in City of Miami Beach v. Ocean & Inland Co. (Fla.), 3 So. 2d 364, a line must be drawn somewhere, and wherever it is placed it is bound to have the appearance of arbitrariness. If the restrictions on their property are relaxed because of the existence of multiple rental units to the south, and they are permitted to construct multiple rental units on their lot, the Van Scoy property, adjacent to their property to the north, would become entitled to have the same rule applied.

The R-2 zoned area in which this property is located is a rather small area, fronting for a distance of approximately 850 feet along Poinsettia Ave. and extending eastward to the lake shore. It was testified that it is the only lake front area in the vicinity where private residential use is protected by the zoning regulations. The owners of the several lots to the north of the property have vigorously opposed the granting of this variance at all stages of the proceeding. Approximately one-fourth of this small R-2 zone, i.e., the portion south of the Tito property, has lost its character as private residential property due to the existence of multiple rental units thereon. If lot by lot encroachment of the remaining portion of the said R-2 area is permitted, within a short time the entire

remaining residential area will in effect be re-zoned to permit multiple unit construction through the granting of successive variance permits by the board of appeals. Such is not a proper method for changing the zoning classification of an area.

The Titos testified and the board found that they purchased their lot in January 1952 for the sole purpose of proceeding with construction of multiple rental units thereon. They testified that they would not have purchased the property under the present classification, and that it was their intention to remove the single family residence building located on the property and proceed with the construction of rental units as soon as the necessary arrangements could be made. The prior zoning map, which was introduced into evidence, indicates that at the time they purchased their lot the zoning classification permitted multiple unit construction on the lake side portion of their lot (which is the portion on which the rental units are to be constructed if the variance is permitted), while the Poinsettia Ave. portion of the lot was restricted to use for single family residences. The Titos further testified that they needed the income from the proposed rental units for their livelihood. There is authority for the granting of variance permits where the land was purchased for the proposed use prior to the enactment of the more restricted classification. See annotation, 168 A.L.R., page 47.

Under the zoning ordinance of the city of West Palm Beach the board has authority to authorize a variation such as applicants are seeking here—". . . only when the board is satisfied that a granting of such variation will not merely serve as a convenience to the applicant, but will alleviate some demonstrable and unusual hardship or difficulty so great as to warrant a variation from the comprehensive plan as established by this ordinance, *and at the same time the surrounding property will be properly protected.*" (Italics added.)

The court is convinced from the testimony that the variance permit applied for by the Titos cannot be granted without contributing to the disintegration of the zoning protection the present R-2 classification provides for the lots lying north of the Tito property. It is conceded that the existence of multiple family unit housing on the lot adjacent to the Tito property on the south makes their property less valuable in the market and less desirable for the single family residential use to which it is limited. Justice will not be served by transferring the burden being borne by Sophia and Antonio Tito to their neighbor on the north.

The petition for writ of certiorari is granted and the order of the zoning board of appeals of the city of West Palm Beach dated July 8, 1954 granting a special exception to Sophia and Antonio Tito is quashed.